[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This strenuously contested dissolution matter comes to the Court by summons and complaint of March 6, 1991, wherein the plaintiff, Amy K. Wooten (hereinafter plaintiff/mother) claims a dissolution, custody of the minor child issue of the marriage, and other related relief against Michael L. Wooten (hereinafter defendant/father). The officer's return of service shows that the defendant was served in hand with the complaint and various motions on March 11, 1991. The case was given a return date of April 2, 1991 and was actually filed in court on March 20, 1991. Defendant thereafter appeared by counsel. Various pendente lite orders were entered and from time to time modified. The question of custody and visitation was referred to family relations on May 13, 1991, and their recommendations on visitation were adopted by the Court after a stipulation of the parties on January 10, 1992. (See Plaintiff's Exhibit 1).
Both parties were present in court when the matter was assigned for trial at Norwich on June 5, 1992. CT Page 5835
At the trial, the parties submitted the required financial affidavits, an affidavit relating to the custody of the minor child issue of the marriage, an advisement of rights re: wage withholding, and a child support guidelines worksheet. By stipulation of the parties, the plaintiff was permitted to amend the complaint to allege the birth of another child, David John Valenti, who was not issue of the marriage after the parties separated but before the hearing on the dissolution.
Also by stipulations, the parties filed Plaintiff's Exhibit 1, which is a written "Partial Agreement" dated June 5, 1992, and which has attached the Family Division Family Services Unit Report of Mediation relating to the issue of visitation with the minor child Steven.
The agreement provides for joint custody of the minor child Steven, born August 26, 1988, provisions for medical insurance, an allocation of the motor vehicles, and certain other personal property. In addition, both parties have waived any claim to alimony and have allocated the tax exemption privileges relating to the minor child Steven.
Therefore, for purposes of the trial, the parties were substantially at issue with regard to the question of the proper amount of child support and the assignment of the marital property interests and debts. The Court heard testimony with regard to the same from the plaintiff, the defendant and the defendant's father, Walter Wooten.
With regard to the minor child David John Valenti, both of the parties testified that this child, born on March 3, 1992, was not the issue of the marriage. Both parties indicated that the last time they were involved in sexual relations which could have resulted in conception was in February 1991. Mrs. Wooten, the plaintiff, testified that David was conceived after her relationship with Mr. Valenti at about the middle of May 1991 and that Mr. Valenti's name was on David's birth certificate as the father.
The Court, therefore, will make a finding that the child David John Valenti, born March 3, 1992, is not the issue of the marriage and that Michael L. Wooten is not the father of the child.
During the testimony of the parties, the plaintiff testified that the cause of the breakdown of the marriage was the drug and alcohol addiction of the defendant and the various financial and family problems resulting from the CT Page 5836 same. Plaintiff admitted participating in the drug and alcohol activity up to 1986, but denies any participation or use of drugs or alcohol thereafter. The plaintiff also testified about the "affairs" that the defendant admitted having with other women during the course of their marriage. The defendant, on the other hand, testified that while he did not deny his drug and alcohol addiction, the plaintiff was equally involved in those activities during a substantial period of time which he claimed ended in about 1988 when the plaintiff learned she was pregnant with Steven. The defendant further claimed that with very few exceptions he made regular and substantial contributions to the family financial support even during his periods of "active" use of drugs. The defendant also claimed that the plaintiff had "affairs" with other men during the course of the marriage upon which he elaborated with some detail.
With regard to the real estate owned jointly by the parties at 12 Hillcrest Avenue, Ledyard, Connecticut, it was stipulated on the record and the Court will find that the present value of the property is $105,000. The financial affidavits of the parties suggest that there is a mortgage obligation secured by a lien on the property of $60,000 or $61,000.
From the divergent testimony offered by the parties, the Court finds that the premises were purchased in 1988 for $65,000 from the parents of the defendant father. The Court further finds that at the time of the purchase in 1988, the property had a value of $105,000 and that the intention of the sellers (the parents of the defendant father) at the time was to make a gift to the parties of the difference between the sales price and the value. Moreover, the defendant's father testified that he considered this gift to be in the nature of a payment of the defendant's "inheritance" and that the defendant could not "count on" receiving any further inheritance. At the time of the acquisition of the real property, the title was placed in both names of the plaintiff and the defendant. It did not go unnoticed by the Court that the testimony clearly reflected that by the time the property was acquired in 1988, the defendant was addicted to alcohol and drugs and had attended several different rehabilitation sessions almost on an annual basis.
The parties contributed jointly to the improvement of the premises by various additions or changes, and notwithstanding the declining real estate market in the area generally, this property seems to have maintained its value, possibly because of such improvements. CT Page 5837
The plaintiff has had the exclusive use of the family residence since the pendente lite orders of the Court on May 13, 1991, and has been responsible for the payment of the mortgage, taxes and related operating expenses of the property. The Court finds from the evidence that since the separation, the defendant has made no contribution to those expenses or to any other of the debts of the family which were existing at the time of the separation of the parties. The defendant does claim to have paid off the AVCO loan of $287 shown on the affidavit submitted at the time of the pendente lite orders. The plaintiff, on the other hand, is found to have had made substantial payments of about $2,000 on various previously existing marital obligations subsequent to the separation.
Except for the drug and alcohol addiction of the defendant, neither party claims any disability by reason of health which should affect the Court's decision and the Court noted none.
The plaintiff is 32 or 33 years of age and the defendant appears to the Court to be about the same from his appearance at the trial.
With regard to the occupation, income, vocational skills and employability of the parties, it appears that at the present time, the plaintiff is the manager of a delicatessen portion of the Stop and Shop store in Clinton, Connecticut. She earns approximately between $42,000 and $43,000 a year. Her financial affidavit reflects a gross income of $818.70 a week. Testimony suggested that at one time when the parties were married in 1982, she was employed as a waitress. The defendant at the time of the marriage was employed, as a cook. At the present time, his financial affidavit suggests that he is a "social worker" for "The Caring Community of Connecticut." He described his activities during his testimony as providing assistance to retarded persons, providing transportation, assistance with daily living skills and behavioral problems. He earns $11.63 an hour. The $523.35 gross income, which he reflects on his affidavit, includes overtime which is not guaranteed. He has some expectation that he might get a reduction of about 3 1/2 percent in pay because the facility where he works is "state funded" and subject to cutbacks.
The plaintiff's education was not made part of the evidence, but from her appearance in court, she obviously is a very intelligent, articulate person with considerable business acumen which has been recognized by her employer CT Page 5838 where she is placed in a position of responsibility and rewarded accordingly. The defendant has a high school education only and appears to the Court to be working at his maximum potential especially considering his addiction and the fact that he has admitted a relapse within the last six weeks.
The opportunity of each of the parties for the future acquisition of capital and income is found to be about in the same proportions as their respective earnings at the present time with the plaintiff having a greater opportunity because of her superior vocational skills, income an employability.
The estate and needs of the parties as set forth on their respective affidavits were not subject to substantial challenge during the trial.
In making its determination with regard to the issues which are in dispute in this case, the Court will consider the statutory factors set forth in Sections 46b-81
and 46b-82 of the General Statutes as well as the child support guidelines adopted pursuant to Public Act 89-203 of the General Assembly.
The Court will also consider the appearance, demeanor, attitude and interest in the outcome of the case of the parties and witnesses as well as the interrelationship of the various orders.
In the areas of substantial dispute, the plaintiff has requested that the Court order support in the amount of $87.74 and the exact amount shown on the child support guidelines worksheet. In that regard, the defendant indicates a request that $80 be ordered which is within a 15 percent deviation.
With regard to the real estate, the parties are in agreement that the Court should order the real estate to be sold, listed with a realtor agreeable to the parties, and priced at a price suggested by the realtor. The price should be modified downward from time to time as suggested by the realtor until a sale is obtained. The parties disagree, however, as to the division of the proceeds of any sale. The plaintiff claims that all of the family debts (except the Hubert Kennedy obligation as shown on her affidavit) as well as the commission, costs of sale and mortgage should be deducted from the proceeds before they are divided and that the division should be 60 percent for her and 40 percent only to the defendant. The defendant, on the other hand, claims CT Page 5839 that the only deduction from the proceeds should be the real estate commission, the costs of the sale, and the mortgage, and that when the proceeds are divided, he should receive 60 percent and the plaintiff should receive 40 percent only. The defendant indicates a willingness to assume the Sears Roebuck obligation of $1,200, but feels the plaintiff should be responsible for the other obligations, especially since in the agreement of the parties, she is receiving most of the personal property which relates to the same.
With regard to the other issues, the parties do not seem to be in substantial disagreement and many of the matters have been agreed to as indicated above.
Giving consideration to the factors indicated above and the claims of the parties, the Court finds that it has jurisdiction by virtue of the residency of the parties and that the marriage has broken down irretrievably. decree of dissolution may enter. Custody of the minor child, Steven Michael Wooten, born August 26, 1988, is awarded jointly to the parties, with primary physical custody to be with the plaintiff mother and reasonable rights of visitation are granted to the defendant father as follows:
1. Alternating weekends from Saturday at 7:15 a.m. to Sunday at 6:00 p.m.
2. On intervening Saturdays from 7:15 a.m. to 7:00 p.m.
3. During the above periods of time, the defendant's visit with Steven during the daytime shall be unsupervised, however, the child's sleepovers shall occur at the home of the paternal grandparents, Walter and Sylvia Wooten.
If any regularly scheduled school or sports activity of the minor child falls at a time this schedule provides for visitation, the father shall take the child to the event in lieu of the visitation or may elect to waive visitation on that occasion by 24 hours advance notice.
The plaintiff is ordered to provide medical insurance coverage for the benefit of the minor child as available to her through her place of employment and the parties are ordered to equally divide the costs of any and all uncovered or unreimbursed health-related expenses. The provisions of Section 46b-84c of the Connecticut General Statutes shall apply. Unreimbursed expenses for purposes of this judgment shall include medical, dental, orthodonture, CT Page 5840 and ophthalmological expenses.
The defendant shall pay to the plaintiff for the support of the minor child, Steven, the sum of $80 per week with a contingent wage execution ordered pursuant to the waiver signed by the plaintiff. The parties shall alternate claiming the minor child, Steven, as an exemption for federal and state income tax purposes with the defendant having the ability to claim the child for the tax year 1992 and alternating thereafter.
Both the plaintiff and the defendant are ordered to maintain their minor child, Steven, as an irrevocable beneficiary on any life insurance coverage they may presently have through their separate places of employment.
The defendant husband shall retain the 1986 Honda motor vehicle and the plaintiff wife shall retain the 1989 Honda motor vehicle. Each party will cooperate in the transferring of title and necessary documentation to carry this order into effect and each party shall assume, maintain and be responsible for all debts, loan balances and other expenses on the vehicle which they receive and shall hold the other party harmless from the same.
No alimony is awarded to either party, lump sum or periodic. The personal property of the parties shall be divided in accordance with the stipulation dated June 5, 1992.
The plaintiff is ordered to pay and be responsible for the obligations shown as liabilities on her financial affidavit to Justin Boughton $500 and Hubert Kennedy $1,000.
The present balances of the other obligations shown on the parties' financial affidavits to Peoples Bank, Sears Roebuck Company and Chase Manhattan shall be deducted from the proceeds of the sale of the real estate as hereafter provided.
The house and lot owned by the parties and located at 12 Hillcrest Avenue, Ledyard, Connecticut, shall be immediately listed with a real estate agent/broker agreeable to both the parties who will determine the sales price for listing purposes and aggressively market the property. Such price shall be reviewed periodically and reduced in accordance with the suggestions of the realtor until a sale is effected. At the time of the sale, there shall be deducted from the proceeds all ordinary commissions, expenses of sale, attorney's fees, and the mortgage on the property CT Page 5841 and three debts referred to above. After such deductions, the net proceeds available shall be distributed to the parties as follows: 60 percent to the defendant and 40 percent to the plaintiff.
Until the time of the sale, the plaintiff shall continue to have the exclusive use of the family residence subject to her paying the mortgage payments, taxes, insurance and other expenses related to the operation of the household. Any such expenses not paid by the time of the closing with regard to the sale of the property which constitute liens on the property shall be paid from the proceeds of the sale and deducted from the portion otherwise payable to the plaintiff. The boat, trailer, motor and motorcycle shall be transferred to the defendant and the plaintiff shall cooperate in signing the necessary documentation relating to the same.
Each party is ordered to provide the other party with written notice of their telephone number, address and employment information and any changes as they occur from time to time. Each party is ordered to send the other party copy of their federal income tax return by certified mail, return receipt requested, on or before April 15 of the following year (the due date for said return).
The plaintiff shall have no claim against any interest of the defendant in a Chelsea Groton Savings Bank account (if there is one), and the defendant shall have no claim against the plaintiff's Rockland Federal savings account as shown on her affidavit.
Leuba, J.